IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADF MIDATLANTIC, LLC          *
                              *
v.                            *     Civil Action No. WMN-13-559
                              *
KLEIN ENTERPRISES, LLC        *
                              *
*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court is a motion to dismiss, ECF No. 14, filed by Defendant Klein Enterprises, LLC (Klein) and a motion for partial summary judgment, ECF No. 17, filed by Plaintiff ADF MidAtlantic, LLC (ADF). Klein has also filed a motion to strike an affidavit which was submitted by ADF in conjunction with its motion for partial summary judgment. ECF No. 22. The motions are all ripe for decision. Upon review of the parties' submissions and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that all three motions will be denied.

**I. FACTUAL BACKGROUND**

This action arises out of a November 28, 2011, contract (the Contract) relating to the sale of ADF's leasehold interest (the Leasehold Interest) in a particular parcel of improved real property in Charlestown, West Virginia (the Property) on which ADF or its predecessor in interest had operated a Pizza Hut Restaurant for about twenty years. There is at least general

agreement as to the facts relevant to the pending motions.  The
primary dispute in these motions turns on the applicability of a
liquidated damages clause in the Contract.  The applicability of
that liquidated damages provision depends, in part, on whether
the Contract was an option contract, as ADF contends, or a
bilateral sales contract, as Klein contends.  The facts giving
rise to this action are as follows.

At the time that the parties entered into the Contract, the
Property was owned by First Charles Town Group, Inc. (First
Charles) and was occupied by ADF pursuant to an August 15, 1991,
lease agreement (the Lease Agreement).  The Lease Agreement was
for an initial term of approximately twenty years and that
initial term was set to expire on September 30, 2012.  The lease
would automatically renew for an additional five years, however,
unless either First Charles or ADF provided notice, 60 days
prior to September 30, 2012, of its intent not to renew.  The
Lease Agreement contained a second five-year automatic extension
subject to a similar provision, allowing either party to prevent
the extension simply by giving notice 60 days prior to the
expiration of the first extension.  Lease Agreement ¶ 2.

The Lease Agreement also contained a "Right of First
Refusal" provision.  Id. ¶ 18.  Under this provision, before
selling the Property to any third party, First Charles was
obligated to give written notice to ADF of the terms and

conditions of its desire to sell the Property and to offer the Property to ADF on those same terms. Upon receipt of that notice, ADF had ten days to either accept or reject that offer. If ADF rejected the offer, First Charles would be free to sell the property to the third party on those same terms and conditions.

In late 2010 or early 2011, Klein became interested in purchasing the Property and expressed that interest to First Charles. In conjunction with the intended purchase of the Property from First Charles, Klein sent ADF, on February 4, 2011, a Letter of Intent proposing terms for the purchase of ADF's Leasehold Interest in the Property. Klein and ADF then continued to negotiate the purchase of the Leasehold Interest from February 2011 through November 2011.

On November 28, 2011, Klein and ADF executed the Contract that is at the center of this controversy. The Contract established a sales price of $850,000 for ADF's Leasehold Interest. An initial deposit of $40,000 was due within three days of the execution of the Contract. After execution of the Contract, Klein was provided with a 90 day "Due Diligence Period" during which it could study the Property to determine its suitability for Klein's intended purpose. During that Due Diligence Period, Klein could terminate the Contract and the initial deposit would be returned and the Contract deemed null

and void.  If, however, Klein did not elect to terminate the
Contract within the Due Diligence Period, it was required to
deliver an additional deposit of $45,000 and "the Contract shall
continue in full force and effect and the [now $85,000] Deposit
will become non-refundable in accordance with the terms of the
Contract."  Id.

In the "Representations and Warranties" section of the
Contract, there was a provision that "[s]o long as this Contract
remains in full force and effect, [ADF] shall not, without the
written consent of [Klein], [] effect any change in the Lease,
[] renew, cancel, or otherwise modify in any way the term of the
lease, or [] enter into any new lease or other agreement with
respect to the Property."  Id. ¶ 5(a)(i).  ADF also warranted
that as long as the Contract was in effect, including as of the
date of the closing, ADF would have "no outstanding option
rights or other arrangements with respect to the Leasehold
Interest."  Id. ¶ 5(a)(xii).  In Klein's view, by making these
warranties, ADF contracted away its right of first refusal for
purchasing the property.  Klein's Mot. at 13.

Finally, the Contract contained a "Default" provision, the
application of which is at issue in these pending motions.  This
clause provides that, if ADF "wrongfully fails" to deliver the
Leasehold or otherwise breach the Contract, Klein would be
entitled to the return of the full deposit but would also "be

4

entitled to exercise any and all rights and to seek any and all remedies" which Klein might have against ADF, including a suit for specific performance of the Contract. In contrast, the Contract provided that, if Klein "wrongfully fails" to pay the Purchase Price or otherwise breaches the Contract and ADF is ready, willing and able to perform then,

> as [ADF's] sole remedy, [Klein] shall forfeit the Deposit and it shall be and become the property of [ADF], which sum shall be deemed by the parties to be liquidated damages for the failure of [Klein] to perform the obligations imposed upon it pursuant to the terms of this Contract, such damages not otherwise being ascertainable, and [Klein] shall be relieved of all further liability and obligations in connection with this Contract.

Id. ¶ 20.[1]

The Contract was executed; Klein made the initial deposit; Klein allowed the 90 day Due Diligence Period to expire, without terminating the Contract; and Klein made the second deposit. Klein then entered into a contract with First Charles to purchase the Property. On April 20, 2012, Klein sent a letter to ADF stating that, pursuant to the November 28, 2011, Contract, "this letter shall serve as notice that [Klein] is exercising our right to close on Monday, May 21, 2012." Compl. Ex. 3 (the Closing Letter). Although closing was initially set

---

[1] The Contract also included a provision under which both parties waived the right to a jury trial of any claims arising under the Contract. Id. ¶ 25. The parties seem to concede the applicability of this provision as neither party has pled a jury trial.

for May 21, 2012, ADF indicates that it was "postponed by mutual agreement." Compl. ¶ 11.

On May 1, 2012, consistent with the right of first refusal provision in the Leasehold Agreement, First Charles sent a letter to ADF: (1) informing ADF that it had entered into a contract with Klein for the sale of the Property; (2) providing the terms and conditions of the sale; and (3) giving notice that ADF had ten days from that date to exercise its right of first refusal. ADF did not exercise that right, relying on Klein's declared intention to purchase ADF's Leasehold Interest, and proceeded to make and carry out provisions to move its Pizza Hut restaurant to another location. Klein, through an affiliate entity, Charles Town DP, LLC (Charles Town), purchased the Property on May 17, 2012.

Sometime in June of 2012, after ADF had waived its right of first refusal and Klein had purchased the Property, Klein advised ADF that it had recently discovered the provision in the Leasehold Agreement that permits either party to prevent the automatic five year extensions to the Leasehold Agreement by simply giving written notice to the other party of the desire not to extend the lease. Hardy Aff. ¶ 11. On July 25, 2012, Charles Town sent a letter to ADF stating that Charles Town, as the new landlord, was electing not to extend the term of the Lease beyond the initial 20-year term expiring September 30,

2012, pursuant to the terms of the Leasehold Agreement.  Then, on September 13, 2012, Klein, through counsel, informed ADF that "Klein has determined that for good and sufficient business reasons, it will not be closing for the purchase and paying the Purchase Price under the Contract."  Hardy Aff., Ex. 4.  It further acknowledged that "Klein is willing to treat this failure to close and pay the Purchase Price as a default by the Buyer."  Id.  Furthermore, the letter stated that, once ADF confirms that it was ready, willing, and able to perform its obligations under the Contract, Klein would instruct the escrow agent to disburse the $85,000 deposit to ADF as liquidated damages.

This course of dealings reveals some anomalous and somewhat inexplicable elements.  First, while both ADF and Klein appear to be sophisticated business entities, they entered into a contract whereby Klein agreed to pay $850,000 for ADF's Leasehold Interest, presumably with the expectation that the Lease would be extended through both additional five-year terms, despite the fact that the owner of the Property could simply terminate the Leasehold Interest at the fast-approaching end of the original term with no payment, whatsoever, by simply giving timely written notice.  Second, it seems surprising that Klein would have been unaware, until June 2012, of this ephemeral aspect of the Leasehold Interest, given that the Lease Agreement

was attached to the Contract when it was executed in November 2011.  On the other hand, it is equally surprising that ADF thought it could sell for significant consideration a Leasehold Interest it did not have the power to preserve.[2]

Notwithstanding the somewhat inexplicable motivations behind the formation of the Contract, the Court disagrees with Klein's conclusion that ADF could not have been harmed by its breach.  Observing that the owner of the Property could terminate the Lease at the end of soon-to-be-expiring original term at no cost, Klein concludes that permitting ADF "to walk away with $85,000" should be considered "a windfall."  Def.'s Mot. at 16; see also, Def.'s Reply at 3. n.2 (opining that "ADF is actually in a better position as a result of entering into the Leasehold Contract with Klein than it would otherwise have been" because it received $85,000 for something it would have had to give up, regardless).  What Klein ignores throughout its

_____

[2] While ignoring their own failures to discern this relatively obvious aspect of the Lease Agreement, both sides accuse the other of either a lack of diligence in failing to discover this term, or of knowing about the term but purposely concealing it.  See ADF's Mot. at 12 ("Klein claims it did not know that the Lease allowed termination at the time Klein entered the Contract.  That assertion is not plausible. . . .  The Lease was attached to the Contract as an exhibit, and Klein conducted 90-days of due diligence."); Klein's Reply at 8 n.4 ("To the extent that ADF made what it now views as a bad business deal because it did not anticipate the situation where the Owner would terminate the Lease before Klein paid the purchase price, it should blame itself, not Klein.  ADF was in a superior position as the long time tenant to know the terms of the Lease inside out . . . .").

argument is that ADF, by entering into this Contract and relying on Klein's performance, gave up the right of first refusal to purchase the Property outright that it once had under the terms of the Lease Agreement. The potential value of that right, or whether ADF actually would have exercised it, is not apparent on the current record. Nevertheless, ADF can plausibly claim that Klein, whether inadvertently or intentionally, created the scenario whereby ADF lost that right of first refusal.

On the basis of these allegations, ADF has asserted the following claims: Specific Performance (Count I); Breach of Contract (Count II); Promissory Estoppel/Detrimental Reliance (Count III); Unjust Enrichment (Count IV); and Fraudulent Misrepresentation (Count V). In moving to dismiss all counts of the Amended Complaint, Klein's primary argument is that the "Default" or liquidated damages clause in the Contract limits ADF's recovery to the $85,000 deposit. Klein also raises some additional arguments related to individual claims that will be set out and addressed below. ADF's cross motion for partial summary judgment is limited to a request that summary judgment be entered in its favor with respect to Klein's liquidated damages defense.

## II. LEGAL STANDARDS

Klein has moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive

such a motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

ADF's motion for partial summary judgment is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper under that rule if the evidence before the court establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. As a general

rule, however, summary judgment is not appropriate prior to the completion of discovery.  Webster v. Rumsfeld, 156 F. App'x 571, 575 (4th Cir. 2005).

## III. DISCUSSION

### A. Motion to Strike

Klein has moved to strike the affidavit of ADF's Chief Manager and President, Donald Hardy, on the grounds that there is no indication in the text of the affidavit that Hardy bases his testimony on personal knowledge and that the affidavit includes improper legal argument and conclusions.  In response to the motion to strike, ADF submitted a second affidavit from Mr. Hardy in which he avers that the statements he made in his first affidavit were all based upon his personal knowledge.  ECF No. 26.

With the second affidavit, Mr. Hardy has cured the technical deficiencies of the first.  Because Mr. Hardy was at the center of the negotiations at issue in this action, as evidenced by the fact that he was the recipient named in all of the correspondence directed to ADF, he certainly had firsthand knowledge of the substance of his testimony.  In addition, while it is true that his affidavit drifts, at times, into argument, the Court can parse those portions from its consideration.  The Court will deny the motion to strike.

## B. Applicability of the Liquidated Damages Clause

There is no real question that, if the Contract was an enforceable contract, it was breached by Klein.  The issue is: what damages is ADF entitled to recover because of that breach?  In its motion to dismiss, Klein argues that any recovery is limited to the $85,000 deposit specified in the liquidated damages clause.  In opposing that aspect of Klein's motion to dismiss, ADF makes three arguments.  First, it contends that, under a particular line of Maryland cases, the Contract should be treated as an option contract and, once the option was exercised by Klein's sending of the Closing Letter, the Contract became a bilateral contract, binding on both parties, to which the liquidated damages clause no longer applied.  Second, ADF contends that the clause is unenforceable because $85,000 is an unreasonably low estimation of the potential damages for a breach.  Third, ADF asserts that the clause is unenforceable because Klein breached the Contract in bad faith.  ADF opposes Klein's motion to dismiss on all three grounds, but also argues in its motion for partial summary judgment that, under its option contract argument, the Court can determine as a matter of law that the liquidated damages clause is no longer applicable. ADF recognizes that its other two arguments would only be resolvable in its favor after some discovery and thus, ADF's

motion for partial summary judgment is limited to that first argument.

The case on which ADF most heavily relies for its option contract argument is Dixon v. Haft, 253 A.2d 715 (Md. 1969). In Dixon, the Maryland Court of Appeals interpreted the legal effect of the following provision in a real estate contract, executed on January 6, 1966:

> Time is of the essence of this Contract and within ninety days from the date of acceptance hereof by the Seller, or within ninety days after all contingencies have been eliminated or as soon threafter (sic) as a report on the title can be secured if promptly ordered, and an appointment can be made with the Title Company for settlement, the Seller and Purchaser are required and agree to make full settlement in accordance with the terms hereof. If the Purchaser shall fail to do so, the deposit herein provided shall be forfeited as the sole remedy of the Seller and the Purchaser shall thereby be relieved from further liability hereunder.

253 A.2d at 716 (emphasis added by Dixon court). "At the instance of the purchasers," id., a settlement was scheduled for April 6, 1966, but, while the sellers and the agent for the purchasers met on that date, the purchasers' agent requested that the actual settlement be postponed until April 11 to permit the purchasers to verify certain aspects of the title and land survey. Id. The parties agreed to postpone the settlement and the purchasers' agent confirmed that agreement in a letter. Subsequently, however, the purchasers refused to settle for reasons unrelated to the title or survey verifications. When

the sellers sued for breach of contract, the trial court limited their recovery to the retention of the deposit, relying on the above quoted "sole remedy" language. Id. at 717.

On appeal, the Maryland Court of Appeals reversed that decision, holding that "the trial court took too narrow a view of the effect of the contract entered into on April 6." Relying on two previous decisions, Messina v. Moeller, 133 A.2d 75 (Md. 1957) and Schlee v. Bryant, 234 A.2d 457 (Md. 1967), the court held that the January 6, 1966, contract was, in actuality, an option contract. In language cited here by ADF, the court observed that, under such a contract, "if the purchaser gave evidence that he had chosen his option to perform rather than reject his right to buy the property there ensued a contract binding on both sides that justified specific performance by either." ADF's Mot. at 16 (citing Dixon, 253 A.2d at 718, emphasis added by ADF). As to what happened to the "sole remedy" provision, the Maryland Court of Appeals ruled that, once the option was exercised by a subsequent agreement to perform, "an executory bilateral contract would come into existence and [] the clause providing for the forfeiture of the deposit and relieving the purchaser of further liability, which related solely to the option agreement, would no longer be the measure of damages for breach of the newly formed contract."

<u>Kasten Const. Co. v. Jolles</u>, 278 A.2d 48, 50 (Md. 1971)

(summarizing the holding in <u>Dixon</u>).

While this Court finds some support in <u>Dixon</u> for the
conclusion that the Contract at issue here was an option
contract and, with the exercise of that option, the liquidated
damages clause could fall away, the Court is less clear that,
under <u>Dixon</u>, Klein can be said to have exercised the option
simply by sending the Closing Letter.  In <u>Dixon</u>, after
describing the purchaser's "absolute right under the contract
language . . . to choose between consummating the purchase on
the agreed upon terms or of walking away, for any reason or no
reason, with no obligation or liability whatever save the loss
of his deposit," the court noted that "<u>these options were still
those of the purchaser</u> in the case before us <u>on April 6 when the
settlement he had called was held</u>."  253 A.2d at 718 (emphasis
added).  Apparently, simply requesting a settlement was not
sufficient to have been deemed an exercise of the option.

In support of its holding that the option was exercised and
a binding bilateral contract formed, the <u>Dixon</u> court relied on
two decisions from other jurisdictions, <u>Sunset Beach Amusement
Corp. v. Belk</u>, 158 A.2d 35 (N.J. 1960), and <u>Neher v. Kauffman</u>,
242 P. 713 (Cal. 1925), that the Maryland Court of Appeals found
"not too dissimilar on the facts."  253 A.2d at 718.  The
parties in <u>Sunset Beach</u> had appeared at what the Supreme Court

of New Jersey viewed as a "rather typical final closing" and "the executory contract of sale was consummated subject to some loose ends which the parties conceived to be too minor to warrant postponement of the [settlement]." 158 A.2d at 38. Under those facts, the court found "the die was cast" and specific performance was called for. Id. Similarly, in Neher, the parties had signed and delivered escrow instructions to each other which the Supreme Court of California viewed as supplementing or modifying the terms of the original agreements. As in Dixon, the contracting parties' course of conduct in these cases was far more definitive than Klein's sending of the Closing Letter.

On the other hand, in Schlee v. Bryant, one of the Maryland cases relied upon in Dixon, the Court of Appeals found that the purchaser's option was exercised simply by the purchaser's oral representation to the seller's agent that "he was willing to proceed to settlement and that [the seller's agent] should order a title search and arrange for settlement." 234 A.2d at 459. The contract at issue in Schlee contained the following clause:

> Within 90 days from the date of acceptance hereof by
> the owner, or as soon thereafter as a report on the
> title can be secured if promptly ordered, the seller
> and purchaser are required and agree to make full
> settlement in accordance with the terms hereof.  If
> the purchaser shall fail so to do, the deposit herein
> provided for [shall] be forfeited [] in which event
> the purchaser shall be relieved from further liability
> hereunder[].

Id. at 459.[3]  Finding that the purchaser had effectively

exercised his option to purchase the property, the trial court,

notwithstanding this provision, ordered specific performance of

the contract and the Court of Appeals affirmed that ruling.

Schlee, however, came to the trial court in a very

different posture than the case at bar.  In Schlee, it was the

sellers that breached the contract.  Because the surveyor who

was to survey the property was unable to complete the requisite

survey within the 90 day period set out in the contract, the

settlement was scheduled by the seller's agent for the 92nd day

after the acceptance of the contract.  The purchaser and the

seller's agent appeared at settlement, the note and deed of

trust were executed, and the purchaser tendered a check for the

balance due.  The seller did not appear at settlement,

subsequently refused to perform under the contract, and then

demanded the forfeiture of the deposit under the terms of the

above quoted language.  Under these facts, very different from

the allegations here, the Maryland Court of Appeals held that

specific performance of the contract was appropriate.

It is not clear from the current record in this case that

it can be said, as a matter of law, that Klein exercised its

---

[3] The parties had crossed out portions of this provision from
language that appeared on a form contract.  The above quoted
language is this provision, after the alteration by the parties.

option to purchase the Leasehold Interest.[4]  Klein certainly did

no more here than the purchasers in Dixon had done at a point in

time that the Court of Appeals opined they still maintained the

right to walk away from the contract.  See supra.  In each of the

cases relied upon by ADF or cited by Dixon, there was a

substantial course of conduct considered by the court in

determining if the purchasers had given evidence that they had

chosen the option to perform.  Here, we have nothing more than

the sending of the Closing Letter in which Klein proposed a

settlement date of May 21, 2012, and the allegation that the

parties postponed that date "by mutual agreement."  Compl. ¶ 11.[5]

    The Court notes that, even if Klein is not found to have

exercised its option, there is at least a question of fact as to

---

[4] Klein argues that, were the Court to adopt ADF's option
contract argument, "the liquidated damages clause may never
apply for a wrongful failure to pay the purchase price, because
Klein would always have taken some action prior to the date the
purchase price was due to exercise the 'option' . . . ."
Klein's Reply at 9.  The Court disagrees.  Under the Contract,
there are three distinct timeframes within which a decision by
Klein not to go forward with the purchase would lead to three
different results.  During the Due Diligence Period, Klein could
decide not to go forward with the purchase for any reason and
would receive back its initial deposit.  After the Due Diligence
Period, but before Klein exercised the option, a breach would be
subject to the liquidated damages clause and Klein would forfeit
the entire deposit.  Once Klein exercised the option, however,
the liquidated damages clause would no longer be in effect.

[5] The Court also notes that, if Klein is found to have exercised
its option, it would not necessarily follow that the remedy
would be specific performance of the Contract.  In a technical
sense, ADF no longer possesses an interest in the Property to
convey to Klein.

18

whether the liquidated damages clause would be enforceable. ADF argues that, just as a liquidated damages clause specifying an amount too high is void as a penalty, a liquidated damages clause specifying an amount that is too low is also unenforceable. While ADF points to no case law in Maryland supporting this position, and this Court is aware of none, the extension of this principle to liquidated damages that are too low logically follows. The Restatement (Second) of Contracts states that liquidated damages are enforceable "only at an amount that is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." Restatement (Second) of Contracts § 356. While § 356 of that Restatement provides that a "term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty," the comments to that section add, "[a] term that fixes an unreasonably small amount as damages may be unenforceable as unconscionable." Id., Comment 1. Similarly, the section of the Uniform Commercial Code for the sale of goods provides in the Official Comments, "[a] term fixing unreasonably large liquidated damages is expressly made void as a penalty. An unreasonably small amount would be subject to similar criticisms and might be stricken under the section on unconscionable contracts or clauses." Md. Code Ann., Com. Law § 2-718.

Klein argues that, even if a liquidated damages clause can be held unenforceable if too low, $85,000 is not too low an estimate of the damages that would flow from a breach of this Contract, given that the owner of the Property could terminate ADF's Leasehold Interest at no cost.  The Court agrees that it may be very difficult for ADF to prove that any amount was too low for an interest that could turn out to have no value.  At the time of contracting, however, the parties apparently agreed that the fair value of ADF's interest was $850,000.  Furthermore, the damage caused by the breach of the contract, at least the kind of breach that subsequently occurred, was ADF's loss of its right of first refusal.  On the current record, the Court cannot assess how the parties would have valued that right at the time of contract.[6]

## C. ADF's Quasi-Contract Claims

Klein first argues that ADF's Promissory Estoppel and Unjust Enrichment claims must be dismissed under "'the general rule [] that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'"  Klein's

_____

[6] Because the Court finds that the liquidated damages clause could be found unenforceable on other grounds, it need not reach ADF's third argument regarding the implications of a "bad faith" breach of contract.  In some ways, this argument begins to overlap with the arguments regarding the fraud claim, discussed below.

Mot. at 12 (quoting Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607 (Md. 2000)). ADF does not dispute that, if the Contract is enforceable, its quasi-contractual claims cannot be maintained. Anticipating, however, that Klein will assert the affirmative defense of mutual mistake when it answers the Complaint, ADF suggests that it should be able to assert these claims in the alternative should Klein seek, and the Court grant, rescission of the Contract. While the Court agrees with Klein that, if the Contract stands, the quasi-contractual claims fall, the alternative pleading of these claims is appropriate in this instance.

Klein also challenges ADF's ability to factually support either claim. To prove a claim of promissory estoppel, a plaintiff must establish:

1. a clear and definite promise;

2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;

3. which does induce actual and reasonable action or forbearance by the promisee; and

4. causes a detriment which can only be avoided by the enforcement of the promise.

Pavel Enters., Inc. v. A.S. Johnson Co., Inc., 674 A.2d 521 (Md. 1996) (citing Restatement (Second) of Contracts § 90(1)). ADF asserts that, in reliance on Klein's promise to purchase its Leasehold Interest for $850,000, it did not exercise its right

of first refusal to purchase the Property and, subsequently, had to relocate its business.

To prove a claim of unjust enrichment, a plaintiff must establish:

> "1. A benefit conferred upon the defendant by the plaintiff;
>
> 2. An appreciation or knowledge by the defendant of the benefit; and
>
> 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."

Cnty. Comm'rs of Caroline Cnty., 747 A.2d at 607 n.7 (quoting Everhart v. Miles, 422 A.2d 28, 31 (Md. Ct. Spec. App. 1980)). ADF alleges that, despite the parties having once agreed that the value of ADF's Leasehold Interest was $850,000, Klein will receive the Property free and clear of the Leasehold Interest without making any payment to ADF if the Contract is not enforced (or only one tenth of the value if the liquidated damages provision is enforced).  While the Court expresses no opinion as to whether ADF can ultimately establish that it would be inequitable under these circumstances for Klein to have obtained everything for which it contracted at no cost (or a fraction of the cost), at this stage in the litigation, the Court finds that ADF has adequately stated a claim for unjust enrichment.

In what seems a somewhat cyclical argument, Klein suggests that ADF is unable to establish the central allegation that supports both claims (i.e., that Klein's issuance of the Closing Letter induced ADF to forgo its purchase option) "because ADF had already relinquished the purchase option in the Leasehold Contract." Klein's Reply at 19. That relinquishment, however, was allegedly in reliance on promises made by Klein when it entered the Contract, not just when it sent the Closing Letter. Furthermore, the Court would only reach the quasi-contract claims if the Contract is declared unenforceable. Klein cannot argue that the Contract should be rescinded because it was based on a mutual mistake, and then seek to bind ADF to the terms of that Contract.

## D. ADF's Fraud Claim

In order to recover damages in an action for fraud or deceit in Maryland, a plaintiff must prove

> (1) that the defendant made a false representation to the plaintiff,
>
> (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth,
>
> (3) that the misrepresentation was made for the purpose of defrauding the plaintiff,
>
> (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and
>
> (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

<u>Nails v. S & R, Inc.</u>, 639 A.2d 660, 668 (Md. 1994). "Although a cause of action for fraud may not rest on a statement about future events, a person may commit fraud if he or she enters an agreement to do something, without the present intention of performing." <u>First Union Nat. Bank v. Steele Software Systems Corp.</u>, 838 A.2d 404, 426 (Md. Ct. Spec. App. 2003).

Furthermore, fraud claims are subject to the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure. Under that Rule, a plaintiff must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (citation and internal quotation marks omitted). "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." <u>Id.</u> (citation omitted).

The basic premise of ADF's fraud claim is that "Klein never intended to purchase the Leasehold Interest from ADF for the Purchase Price. Instead, Klein intentionally deceived ADF so that ADF would forgo its right of first refusal and move its business to an alternative property, so that Klein could take

24

possession of the Property without paying the promised Purchase Price." Compl. ¶ 47.  From this premise and the rest of the Complaint, it is clear that the alleged misrepresentations were made where and when the November 28, 2011, Contract was executed and the April 20, 2012, Closing Letter was sent.  The individual making the allegedly fraudulent representations was Daniel Klein, who negotiated and executed the Contract on behalf of Klein Enterprises.  Furthermore, while these alleged fraudulent representations relate to a future event, ADF asserts that they were made with a present intent not to perform.

Klein's central argument against the fraud claim is similar to its argument against the quasi-contract claims.  By focusing only on the issuance of the Closing Letter, Klein contends that, because ADF represented in the Contract that it had no right of first refusal, it could not have been induced to give up that right by the issuance of the Closing Letter.  Klein ignores ADF's allegation that Klein "never intended" to purchase ADF's Leasehold Interest and, thus, ADF was induced to enter the Contract itself by a fraudulent representation.  Whether ADF can prove that Klein always had that fraudulent intent is a question for another day.

## IV. CONCLUSION

For the reasons stated above, Klein's motion to dismiss and ADF's motion for partial summary judgment will both be denied. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: November 12, 2013